**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

OUTOTEC (USA) INC., a Delaware
Corporation,

       Plaintiff,

vs.                                   Case No. 3:19-cv-1427-J-34PDB

NOBLEMEIR, INC., a Florida Corporation,
PHYSEP COMPONENTS AND
SERVICE, INC., a Florida Corporation,
JAMES C. DOMENICO, an individual,

       Defendants.

_____/

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM ON THE AMOUNT
OF SECURITY WHICH MUST BE POSTED UNDER RULE 65(C)
IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, Outotec (USA) Inc. ("Outotec"), pursuant to the Court's December 13, 2019 Order (Doc. No. 18), hereby submits the following supplement to its Motion for Preliminary Injunction ("Motion") (Doc. No. 5) on the amount of security which should be posted under Federal Rule of Civil Procedure 65(c).

**I.    If Outotec's Motion is granted, any bond should be minimal.**

Rule 65(c) prohibits the issuance of a preliminary injunction unless the moving party posts security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The district court is vested with the discretion in determining the appropriate amount and type of security required. *See Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less, Over Parcel(s) of Land of Approximately 1.21 Acres, More or Less, Situated in Land Lot 1049*, 910 F.3d 1130, 1172-73 (11th Cir. 2018). In exercising this discretion—and despite the mandate in Rule 65(c)—the district court is authorized

to "issue a preliminary injunction without requiring the movant to give security." *Herb Reed Enterprises, LLC v. World Famous Platters Road Shows I LLC*, No. 8:14-cv-56-T-17-AEP, 2014 WL 12573009, at *5 (M.D. Fla. Feb. 7, 2014); *see also BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Services, LLC*, 425 F.3d 964, 971 (11th Cir. 2005).

In determining whether, and in what amount, the moving party should post security under Rule 65(c), courts have considered several factors, such as (1) lost profits by the non-moving party if the injunction issues, (2) the strength of the moving party's claims, and (3) the non-moving party's legitimate interest in the act or actions sought to be enjoined. *See Estetique Inc. USA v. Xpamed LLC*, No. 0:11-CIV-61740, 2011 WL 5873029, at *2 (S.D. Fla. Nov. 22, 2011) (increasing the amount of bond to $100,000 due to testimony about the non-moving party's net business profit); *TracFone Wireless, Inc. v. Washington*, 978 F. Supp. 2d 1225, 1235 (M.D. Fla. 2013) (determining that the plaintiff should not have to post a bond when considering plaintiff's high probability of succeeding on the merits of its claims and the lack of legitimate interest the defendants had in the continued use of plaintiff's disputed trademarks). "The burden of establishing a rational basis for the amount of a proposed bond rests with the party seeking security." *Medi-Weightloss Franchising USA, LLC v. Sadek*, No. 8:09-cv-2421-T-24MAP, 2010 WL 1837767, at *8 (M.D. Fla. Mar. 11, 2010).

Should the Court grant Outotec's Motion, two factors support the imposition of a minimal bond or even no bond. First, the general facts of the current situation—with a former licensee transferring assets and records to a new company formed by its former president after the expiration of the license—strongly supports the relief Outotec seeks. Outotec also supports its Motion through numerous supporting declarations outlining (1) how Defendants gained access to Outotec's trade secrets under the License Agreement (which itself recognized would occur), (2)

2

how Defendants have misappropriated Outotec's trade secrets through improper disclosure and use of Outotec's confidential information, (3) how Defendants have and are continuing to breach non-disclosure provisions and restrictive covenants in the License Agreement, and (4) how Defendants are actively using Outotec's trade secrets to improperly compete against Outotec for its physical separation customers—the same customers Outotec assigned to PhySep under the License Agreement. Considering the strength of Outotec's evidentiary support for its Motion, the Court can determine that the required security be minimal—or even none—because of the high probability that Outotec prevails on its claims.

Next, Outotec's Motion seeks to enjoin Defendants from using Outotec's trade secrets. Following the expiration of the License Agreement in January 2018, none of the Defendants has a legitimate interest in possessing or using Outotec's trade secrets. This factor also weighs in favor of not requiring a substantial bond.  Finally, if the Court is inclined to require more than a minimal bond, Outotec requests that Court first require a minimal bond but allow Defendants to seek to modify the bond after allowing expedited discovery on the Defendants' financial records and how the non-use of Outotec's trade secrets could possibly hurt them in an improper manner.

A.     **Outotec has a high likelihood of succeeding on its claims; therefore, the security required if the Court grants Outotec's Motion should be minimal.**

When considering the appropriate amount of security required under Rule 65(c), courts routinely look to the strength of the moving party's case. *See TracFone Wireless, Inc.*, 978 F. Supp. 2d at 1235; *see also Great Am. Ins. Co. v. Delphini Constr. Co.*, No. 6:14-cv-1412-Orl-41DAB, 2015 WL 13791707, at *5 (M.D. Fla. Sept. 28, 2015) ("[C]ourts have held that security is not required . . . when the party seeking the injunction has a high probability of succeeding in the merits of its claim." (citing *Univ. Books & Videos, Inc. v. Metro Dade Cnty.*, 33 F. Supp. 2d 1364, 1374 (S.D. Fla. 1999)). Here, the declarations supporting Outotec's Motion show that there is a

high probability that Outotec will succeed on its breach of contract, trade secret misappropriation, unfair competition, and tortious interference claims.

The declarations in support of Outotec's Motion provide definitive proof that Defendants have unlawfully retained, disclosed, and used Outotec's trade secrets to compete against Outotec and its new licensee for physical separation customers. For instance, those declarations establish Defendants' unlawful actions, including:

- Upon the expiration of the License Agreement, PhySep—under Domenico's leadership—failed to return numerous physical binders and other electronic information containing Outotec's trade secrets related to its cryofilter product group. Dykes Decl. ¶¶ 38-40; Barber Decl. ¶¶ 9-13.

- When packing physical binders containing Outotec's trade secrets related to its cryofilter product group, in order to provide the same to Outotec, Domenico personally directed a PhySep employee not to return 80 to 100 binders and stated, "Don't pack these up, they are not leaving this building." Barber Decl. ¶ 12.

- After PhySep transferred its assets to NobleMEIR, NobleMEIR began soliciting Outotec physical separation customers. Dykes Decl. ¶ 47.

- In correspondence sent to Outotec's physical separation customers, NobleMEIR provided product catalogs containing Outotec part numbers that correspond to a confidential drawings providing how to fabricate that specific part, along with other technical know-how. *Id.* at ¶¶ 48-50.

- Since its formation, NobleMEIR has been actively quoting and selling equipment and spare parts that can be manufactured only using Outotec's trade secrets, which Outotec provided to PhySep at the start of the License Agreement and which PhySep illegally provided to NobleMEIR in breach of the License Agreement. *Id.* at ¶ 50.

- NobleMEIR has conducted site visits with Outotec physical separation customers. Jansson Decl. ¶ 33. During these site visits, NobleMEIR, through Domenico, has offered to provide spare parts and technical services for Outotec physical separation equipment. *Id.*

Considering that all the actions highlighted above are in direct and material breach of the License Agreement, as neither PhySep nor NobleMEIR is Outotec's appointed licensee for its physical separation product group, Outotec's Motion provides clear proof that Defendants have

impermissibly misappropriated its trade secrets, engaged in a scheme to side-step the restrictive covenants that bound PhySep for several years following the expiration of the License Agreement, and are actively using Outotec's trade secrets to solicit Outotec's own physical separation customers.

In this situation, given the strength of Outotec's case, any bond should be minimal or waived altogether.

> **B.      Defendants have no legitimate interest in the continued use of Outotec's confidential, trade secret information; therefore, any bond set should be minimal.**

Outotec's Motion, among other things, seeks to enjoin Defendants from continuing to possess, use, or distribute Outotec's trade secrets. At first, Outotec's confidential, trade secret information was provided to PhySep under the License Agreement. Jansson Decl. ¶ 19. In return, PhySep agreed to bind itself to several restrictive covenants both during the term of the License Agreement and for a term of years following the expiration or termination of the License Agreement. *Id*. at ¶ 20. Besides the restrictive covenants in the License Agreement, PhySep also was contractually obligated to return Outotec's trade secrets following the end of the License Agreement. *Id*.

Outotec's Motion seeks to enjoin Defendants' scheme to: (1) withhold Outotec's trade secrets following the expiration of the License Agreement, (2) transfer Outotec's trade secrets to NobleMEIR through a fraudulent transaction and/or de facto merger to end run the restrictive covenants in the License Agreement, and (3) use Outotec's trade secrets to unfairly compete against Outotec. As Outotec's Motion seeks to prevent Defendants from either committing actions that they have no legitimate interest in, as none of the Defendants are Outotec's appointed licensee

with any right to use Outotec's trade secrets,[1] or committing actions in breach of the restrictive covenants in the License Agreement on which both PhySep and NobleMEIR are bound, any required security under Rule 65(c) should be minimal or waived altogether. *See TracFone Wireless, Inc*., 978 F. Supp. 2d at 1235 (holding that the moving party should not need to post a bond when, among other things, the defendants had "no legitimate interest in the continued use of the [plaintiff's] Trademarks . . . .").

## II.   If the Court is inclined to set a bond, Defendants' financial records are highly relevant.

If the Court is inclined to set a bond in this case pursuant to Rule 65(c), an appropriate bond would be the potential harm Defendants could establish with a "rational basis," such as lost profits, lost market share, and other expenses arising from the injunction. *See Estetique Inc. USA*, 2011 WL 5873029, at *2. In an unrelated matter pending in the Circuit Court of Duval County, Florida, *PhySep Components and Serv., Inc. v. Erin B. Dykes et al.*, Case No. 16-2018-CA-001661-XXXX-MA (the "PhySep State Case"), PhySep is suing the principals of Outotec's current licensee for its physical separation business line.  Counsel for Outotec also represents Outotec's licensee in that matter and is in possession of financial information pertaining to PhySep and NobleMEIR.  Such discovery could help the Court analyze the extent to which security should be posted if the Court grants Outotec's Motion. Any such relevant information, however, cannot be disclosed herein according to a confidentiality agreement entered in the PhySep State Case.

---

[1] Outside two customer contracts that PhySep was performing when the License Agreement expired, PhySep's right to use Outotec's trade secrets ended at the moment the License Agreement expired. And, as it relates to those two specific contracts, none of Outotec's related trade secrets related to those contracts have ever been returned, despite Defendant Domenico representing that both contracts had a probable end date of mid-2018. *See* Compl. ¶ 73.

Counsel for Outotec has conferred with Defendants' counsel regarding disclosure of the relevant discovery from the PhySep State Case in order to provide the Court additional facts pertaining to the amount of any security. However, at the time of filing this supplement, Defendants have not granted permission to disclose this financial discovery in connection with Outotec's Motion. For these reasons, if the Court is inclined to set a bond above a minimal amount, then Outotec would request the Court first set a minimal bond and provide Defendants with the opportunity to modify the security after expedited discovery is completed on issues pertaining to the amount of an appropriate bond.  Such a bifurcated process would provide sufficient protection on an interim basis until the bond issue may be fully briefed. Good cause exists for such a request because of the further irreparable harm Outotec stands to suffer if its Motion is not granted. *See Procaps S.A. v. Patheon, Inc.*, No. 12-24356-CIV-GRAHAM/GOODMAN, 2012 WL 12845604, at \*3 (S.D. Fla. Dec. 21, 2012) (explaining that expedited discovery may be ordered when the movant establishes good cause, such as demonstrating "some impelling urgency which necessitates action forthwith . . . .") (citing *GE Seaco Servs., Ltd. v. Interline Connection, N.V.*, No. 09-23864-CIV, 2010 WL 1027408, at \*1  (S.D. March 18, 2010)).

## Conclusion

For the reasons set forth above, Outotec respectfully requests that this Court exercise its discretion to require only a minimal bond, because of (1) the high likelihood that Outotec succeeds on the merits of its claims, and (2) the fact that Defendants have no legitimate interest in the continuing possession and/or use of Outotec's equipment and trade secret information. If the Court is inclined to set a bond for any amount other than a minimal amount, Outotec requests that the Court allow expedited discovery related to Defendants' financial records.

Dated: December 20, 2019.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

/s/ *Frederick D. Page*
Frederick D. Page (FBN 968587)
fred.page@hklaw.com
Joshua H. Roberts (FBN 42029)
joshua.roberts@hklaw.com
Justin W. Dixon (FBN 105860)
justin.dixon@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, FL 32202
(904) 353-2000 (telephone)
(904) 358-1872 (facsimile)

*Attorneys for Outotec (USA) Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of December, 2019, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Frederick D. Page*
Attorney